United States District Court
Southern District of Texas
**ENTERED**
January 17, 2024
Nathan Ochsner, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN THE MATTER OF EXTRADITION OF DANIEL DAVID RODRIGUEZ-LASTRE | § § § § § | No. 4:23-MJ-2028 |

## CERTIFICATION AND ORDER

By complaint filed October 26, 2023, the United States seeks the extradition of Daniel David Rodriguez-Lastre ("Rodriguez-Lastre" or "Defendant") to Spain. Compl., ECF No. 1. Rodriguez-Lastre filed a motion to dismiss the extradition complaint. Mot. to Dism., ECF No. 22. The United States filed a response. Resp., ECF No. 25. Based on a thorough review of the briefing, oral argument, and applicable law, the motion to dismiss is denied, and the Court certifies that Rodriguez-Lastre is extraditable to Spain.

## I.    BACKGROUND

Attached to the Complaint is: (1) an affidavit from Stacy Hauf, an Attorney Adviser in the Office of the Legal Adviser for the U.S. State Department, attesting that extradition is appropriate in this matter;[1] (2) a copy of the Nota Verbal from the

---

[1] Although the Court ultimately makes the decision in this matter, "[c]ase law establishes that such statements from State Department officials are entitled to deference." *Matter of Extradition of Guerrero Lujan*, No. SA-21-MJ-605-HJB, 2022 WL 3581184, at *3 (W.D. Tex. Aug. 18, 2022) (citing *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (statements regarding treaties given "by the

Spanish Embassy requesting the extradition of Rodriguez-Lastre; (3) a copy of the extradition treaty between the United States and Spain; and (4) the extradition package prepared and presented by Spain, containing Certification of articles of the Penal Code and Rodriguez-Lastre's Sentence, International Arrest Warrant, picture and fingerprint identification. ECF No. 1-1. Rodriguez-Lastre's extradition packet summarizes the relevant facts as follows:

> At around midnight on 29 October 2016, a group of people met to make the so-called "botellón" (party with alcohol) in an abandoned factory in the town of Manresa. Among those people were: Daniel David Rodriguez-Lastre, Cuban, of legal age and with no criminal record, among others and [the Victim] [2]. . . among other minors. [The Victim], a person with a low tolerance for alcohol, drank alcoholic beverages and also smoked a marijuana joint, and as a result of the consumption of toxins, completely lost her awareness of what was happening and of what she was doing, an awareness that she did not recover until hours later, quite late in the morning. It did not go unnoticed that [the Victim] was under 16 years old and was in a state of unconsciousness when Bryan Andrés, another convict, took [the Victim], whom he had known for a long time, and went with her to the other cabin, where there was no one. Then, there the man, to satisfy his libidinous desires, inserted his fingers into the girl's vagina. When he finished, Bryan Andrés left [the Victim] in the cabin and went to the other, where the others were, and addressing the men, told them that now they could go, and they did so, one after the other, and among them, [Rodriguez-Lastre], who went to the cabin where [the Victim] was and, to satisfy his libidinous desires, inserted his penis into the girl's vagina.

---

departments of government particularly charged with their negotiation and enforcement is given great weight.")). The Court does so in the instant case.

[2] To protect the identity of the victim who was fourteen years old at the time of the offense, the Court refers to her herein as "the Victim."

ECF No. 1-1 at 24, 28. A lawyer represented Rodriguez-Lastre at a trial on the merits, at which witness statements, messages between Andrés and a witness, and the expert testing of DNA evidence of Rodriguez-Lastre found inside the Victim's trousers were introduced as evidence. *Id.* at 28. Upon consideration of the evidence, the court "concluded that the facts declared substantiated regarding DANIEL DAVID RODRIGUEZ LASTRE constitute a crime of sexual abuse of a minor under sixteen years of age, regulated in Article 183.1 and 3 of the Criminal Code, in force on the date of the events." *Id.* On October 31, 2019, a panel of three senior judges sentenced Rodriguez-Lastre to 10 years imprisonment. *Id.* at 28. On May 11, 2023, the judgment became final. *Id.*

On December 17, 2019, Section 22 of the Provincial Court of Barcelona issued a national arrest warrant, and on February 13, 2020, issued a court order agreeing to issue an international arrest warrant for Rodriguez-Lastre. *Id.* at 28, 72. On October 26, 2023, this Court issued a warrant for Rodriguez-Lastre's arrest. ECF No. 10. On October 31, 2023, U.S. Immigrations and Customs Enforcement turned over custody of Rodriguez-Lastre to the U.S. Marshals Service in Laredo, TX. ECF No. 11. On January 3, 2024, the Court held an extradition hearing. Rodriguez-Lastre appeared with counsel. The Court heard argument from the United States and Rodriguez-Lastre, and then took the matter under advisement.

## II. EXTRADITION PROCEEDINGS ARE GOVERNED BY STATUTE AND TREATY.

An extradition proceeding is not a criminal case and is neither civil nor criminal in nature. *In re Extradition of Shaw,* No. 14-CV-81475-WM, 2015 WL 3442022, at *3 (S.D. Fla. 2015). The extradition process is in a class by itself and sets forth its own law. *Id.; accord United States v. Extradition of Risner*, No. 3:18-MJ-765-BN, 2019 WL 6118377, at *4 (N.D. Tex. Nov. 18, 2019) (citing *Matter of Extradition of Noeller*, No. 17 CR 664, 2018 WL 1027513, at *6 (N.D. Ill. Feb. 23, 2018) (citing *Skaftouros v. United States*, 667 F.3d 144, 155 (2d Cir. 2011))).  It is "primarily an executive function, with the court playing a defined and limited role." *Extradition of Risner*, 2019 WL 6118377, at *4 (quoting *Noeller*, 2018 WL 1027513, at *6); *see also Noeller v. Wojdylo*, 922 F.3d 797, 802 (7th Cir. 2019).

As extradition is a diplomatic process, the applicable extradition treaty and the federal extradition statute govern. *Shaw,* 2015 WL 3442022, at *3; *Risner*, 2019 WL 6118377, at *5 ("International extradition proceedings are governed both by statute (18 U.S.C. §§ 3181, 3184, 3186, 3188–91) and by treaty." (quoting *U.S. v. Valentino*, Case No. 4:18-mj-00146, 2018 WL 2187645, at *4 (S.D. Tex. May 11, 2018)). Because "the judicial role is narrow, . . . discretionary judgments and matters of political and humanitarian judgment are left to the executive branch." *Id.* (quoting *Noeller*, 922 F.3d at 802); *see also Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir. 1980).

Extradition proceedings usually are based on the authenticated documentary evidence and information the requesting government provided. *Shaw,* 2015 WL 3442022, at *4. An extradition defendant is allowed to present evidence, limited to explaining or clarifying the proof, but may not contradict the requesting country's evidence. *Id.* Because of the importance of international obligations and the narrow scope of extradition proceedings, courts have determined that affirmative defenses are not to be considered. *Id.*

"In applying an extradition treaty, the court is to construe it liberally in favor of the requesting nation." *Risner*, 2019 WL 6118377, at *5 (quoting *Valentino*, 2018 WL 2187645, at *4) (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933)). "Although Section 3184 requires the court to decide whether 'evidence [is] sufficient to sustain the charge,' the scope of an evidentiary hearing is not to determine guilt or innocence." *Id.* at 6 (quoting *Matter of Extradition of Bonilla*, No. 1:13-MJ-62, 2014 WL 934903, at *3 (E.D. Tex. Mar. 4, 2014)). Rather, the court's limited function is to conduct "a 'hearing that determines only whether circumstances warrant certification that the respondent is eligible for extradition.'" *Id.* (quoting *Bonilla*, 2014 WL 934903, at *3 (emphasis added)).

## II.   RODRIGUEZ-LASTRE IS EXTRADITABLE TO SPAIN.

A court must make the following findings to certify an extradition: (a) the judicial officer is authorized to conduct the proceeding; (b) the court has jurisdiction

over the fugitive; (c) a valid extradition treaty exists; (d) the offense charged is extraditable under the treaty and United States law; and (e) there is a reasonable basis for finding probable cause that the fugitive committed the offense for which the extradition is sought. *See* 18 U.S.C. § 3184;[3] *Oen Yin-Choy v. Robinson,* 858 F.2d 1400, 1402 (9th Cir. 1988). The Defendant contests only whether the offense is

---

[3] 18 U.S.C. § 3184 provides:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184; *see also* 18 U.S.C. § 3181(a)(1) ("The provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government."). "This section authorizes a judicial officer to hold a hearing to consider a request for surrender. If the judicial officer finds the evidence sufficient to sustain the charges under the treaty or convention, then the officer certifies to the Secretary of State that the individual may be surrendered." *Risner*, 2019 WL 6118377, at *5 (quoting *Ntakirutimana v. Reno*, 184 F.3d 419, 422 (5th Cir. 1999) (citing 18 U.S.C. § 3186 ("conferring final authority on the Secretary of State to order a fugitive's surrender where a judicial officer has ruled that the requirements for extradition have been met")).

extraditable under the treaty. The Court will consider each factor and discuss the arguments Defendant raised against extradition.

### A.    The Judicial Officer Is Authorized To Conduct The Proceeding.

Under the extradition statute, a court of the United States may authorize a magistrate judge to conduct the extradition hearing and certify the extradition. 18 U.S.C. § 3184. The Southern District of Texas authorizes magistrate judges "to perform all of the duties allowed by law." S.D. Tex. L.R 72. Thus, this judicial officer is authorized to conduct the extradition proceeding and certify the extradition. There is no dispute about the Court's authority to conduct this proceeding.

### B.    The Court Has Jurisdiction over Rodriguez-Lastre.

The Court has jurisdiction to extradite "any person found within [the court's] jurisdiction." *See* 18 U.S.C. § 3184.  Pursuant to an arrest warrant, U.S. Marshals obtained custody of Rodriguez-Lastre within the Court's jurisdiction: Laredo, Texas. ECF No. 11. Therefore, the Court has jurisdiction. There is no dispute on this point.

### C.    A Valid Treaty Exists Between the United States and Spain.

A valid extradition treaty exists between the United States and Spain. ECF No. 1-1 at 6–18; *see also* Treaty of Extradition Between the United States of America and Spain, U.S.-Spain, May 29, 1970, 22 U.S.T. 737; *as amended by* the Supplementary Treaty Amending the Treaty of May 29, 1970, U.S.-Spain, Jan. 25, 1975, 29 U.S.T. 2283; the Second Supplementary Extradition Treaty Between the

United States of America and the Kingdom of Spain, U.S.-Spain, Feb. 9, 1988, S. TREATY DOC. NO. 102-24 (1992); the Third Supplementary Extradition Treaty Between the United States of America and the Kingdom of Spain, U.S.-Spain, Mar. 12, 1996, S. TREATY DOC. NO. 105-15 (1997); and the Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty on Extradition Between the United States of America and Spain signed 29 May 1970, and the Supplementary Treaties on Extradition signed 25 January 1975, 9 February 1988 and 12 March 1996, U.S.-Spain, Dec. 17, 2004, S. TREATY DOC. NO. 109-14 (2006) (collectively, the "Treaty"). This factor is not in dispute.

### D.    Rodriguez-Lastre's Offense Is Extraditable Under the Treaty.

Rodriguez-Lastre filed his motion to dismiss based on one issue: that "the offense with which [he] has been charged in Spain falls outside the scope of the treaty between the United States and Spain." ECF No. 22 at 1. Specifically, Rodriguez-Lastre argues that the principle of dual criminality is not satisfied here because for "similar conduct to be criminal in most jurisdictions in [the United States], the government must also prove some age difference between the victim and the accused," but the Spanish offense does not require the government to establish any age-gap between the perpetrator and the victim. *Id.* at 5. Rodriguez-Lastre urges the Court to employ a "categorical approach" to analyze dual criminality,

"focus[ing] on the elements of the crime of conviction and ignor[ing] the particular facts of the case." *Id.* at 6.[4]

The government responds that dual criminality is satisfied because Rodriguez-Lastre's conduct constituted a crime in both Spain and the United States. ECF No. 25 at 10. The government contends that the appropriate inquiry is to "examine the description of the criminal conduct provided by Spain in support of its charge and decide whether that conduct would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states." *Id.* at 12–13 (emphasis in original omitted). The government concludes that here, "[t]he same alleged conduct underlying Spain's charge, so-called "statutory rape", if committed in the United States, would also be criminal and punishable by more than one year of imprisonment under statutes including 18 U.S.C. § 2243(a)(2) and Tex. Penal Code § 22.011(e)(2), both felony offenses." *Id.* at 14.

In this case, Article II of the Treaty states that "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting Parties by deprivation of liberty for a period of more than one year or by a more severe penalty, or in the case of a sentenced person, if the sentence imposed was greater than four

---

[4] In support of this contention, Rodriguez-Lastre cites: *Mathis v. United States*, 579 U.S. 500, 504 (2016); *Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Escalante*, 933 F.3d 395 (5th Cir. 2019); and *United States v. Rodriguez-Flores*, 25 F.4th 385 (5th Cir. 2022). Notably, none of these cases involve extradition proceedings.

months."[5] Article II further states that "an offense shall be an extraditable offense whether or not the law in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology." Article II of the Treaty, Sections A & C.

In every court that has considered the question, courts have found that "[d]ual criminality exists if the *conduct* involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states." *See, e.g., Risner*, 2019 WL 6118377, at *10 (emphasis added) (citing *Cucuzzella v. Keliikoa*, 638 F. 2d 105, 107–08 (9th Cir. 1981); *In re Extradition of Manzi*, 888 F. 2d 204, 207 (1st Cir. 1989); *Quintanilla v. United States*, 582 F. App'x 412, 414 (5th Cir. 2014)); *see also United States v. Perilla Umbarila*, 562 F. Supp. 3d 729, 735–36 (C.D. Cal. 2022) ("Perilla Umbarila's criminal activity in Colombia, had it occurred in the United States, would be subject to prosecution under both federal and state law.") (citing *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993) ("Many cases have held that dual criminality is satisfied even though the names of the crimes and the required elements were different in the two countries.")). Defendant cites no contrary authority based on a case involving extradition.

Here is why: the United States Supreme Court settled this question long ago.

---

[5] Rodriguez-Lastre does not dispute that the requisite period of punishment is met in this case.

"In *Collins v. Loisel*, the Supreme Court held that dual criminality exists 'if the particular act charged is criminal in both jurisdictions,' even if the name of the offense or the scope of the liability differs in the two countries." *Risner*, 2019 WL 6118377, at *10 (quoting *Collins v. Loisel*, 259 U.S. 309, 312 (1922)). "This language has been broadly accepted as establishing that dual criminality requires only that the offenses in the two countries punish the same basic evil; it does not require that the offenses contain identical[6] elements." *Id.* (quoting *Zhenli Ye Gon v. Holt*, 774 F. 3d 207, 217 (4th Cir. 2014)); *see also Kelly v. Griffin*, 241 U.S. 6, 15 (1916); *Gallo-Chamorro v. United States*, 233 F. 3d 1298, 1307 (11th Cir. 2000), *cert. denied*, 516 U.S. 811 (1995); *United States v. Saccoccia*, 58 F. 3d 754, 766 (1st Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996); *United States v. Riviere*, 924 F. 2d 1289, 1302 (3d Cir. 1991). The Supreme Court's pronouncement in 1922 remains the law.  *See, e.g., Matter of Extradition of Benjamin*, 566 F. Supp. 1324, 1332 (S.D. Fla. 2021) ("Dual criminality requires that the charged act be criminal in both jurisdictions," not that the name of the crimes or the scope of liability be the same). Thus, "[t]o determine whether the acts would be punishable in the United States, the

---

[6] "Because extradition treaties should be 'interpreted with a view to fulfil our just obligations to other powers[,]' *Grin v. Shine*, 187 U.S. 181, 184 (1902); *see Factor*, 290 U.S. at 303, the court should 'approach challenges to extradition with a view toward finding the offenses within the treaty,' *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981); *see also Martinez v. United States*, 828 F. 3d 451, 463 (6th Cir. 2016) ("The point of an extradition treaty after all is to facilitate extradition. . . .")." *Risner*, 2019 WL 6118377, at *10. "Thus, a requesting country is not obliged to establish that its crimes are identical to ours." *Id.*

Court looks to *underlying acts* and determines whether they violate federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states." *Matter of Extradition of Guerrero Lujan*, No. SA-21-MJ-605-HJB, 2022 WL 3581184, at *3 (W.D. Tex. Aug. 18, 2022) (emphasis added) (citing *Cucuzzella*, 638 F.2d at 107).

Under Articles 183.1 and 183.3 of the Spanish Criminal Code, "[w]hoever engages in acts of a sexual nature with a child under the age of sixteen years shall be convicted of sexual abuse of a child. . . If the assault consists of vaginal, anal or oral penetration, or inserting body parts or objects into either of the former two orifices, the offender shall be punished with a prison sentence of eight to twelve years, in the case of Section 1. . .." Similarly, federal law is violated when a person knowingly engages in a sexual act with another person, who is more than twelve but less than sixteen years of age and is at least four years younger than the person so engaging. 18 U.S.C. § 2243(a). "Sexual act" includes contact between the mouth and the penis, and intentional touching, not through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to . . . gratify the sexual desire of any person." 18 U.S.C. § 2246(2).

While the elements of the Spanish criminal statute are not identical to the elements of the federal criminal statute, that is not necessary to meet the dual criminality requirement—both address the same underlying conduct of engaging in

a sexual act with a minor. Here, the acts described in the submitted evidence, that then twenty-six year old Rodriguez-Lastre penetrated the sexual organ of the fourteen year old Victim, would violate United States law if it were committed in the United States, which satisfies dual criminality. *See Risner*, 2019 WL 6118377, at *10 ("The same alleged conduct would be criminal, if it were committed in the United States"); *see also Lujan*, 2022 WL 3581184, at *3 (the court rejected Lujan's argument that the two charges' language did not line up, and instead held that dual criminality was satisfied because both charges "address the same underlying conduct" and "punish the same basic evil"); *In re Extradition of Fordham*, 281 F. Supp. 3d 789, 799 (D. Alaska 2017) (dual criminality is satisfied if the "essential character" of the criminal acts of each country are the same and the laws are "substantially analogous").

Even if the Court accepted Rodriguez-Lastre's argument to look at the elements of the offense and not the underlying conduct, the Texas Penal Code provision for sexual assault of a minor does not require the government to prove a certain age-gap between the perpetrator and victim as an element of the offense. Tex. Pen. Code § 22.011 (a)(2)(A).[7] Therefore, dual criminality is met because the

---

[7] Under Texas law, a person commits an offense if "regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means." Tex. Pen. Code § 22.011 (a)(2)(A). "'Child' means a person younger than 17 years of age." Tex. Pen. Code § 22.011 (c)(1). Although the Texas Penal Code contains an affirmative defense regarding the age of the perpetrator compared to the age of the victim, any affirmative defense may not be considered by the extradition

Texas penal code satisfied the requirement even assuming federal law did not. *See United States v. Kollmar*, No. 19MJ70677MAG1KAW, 2021 WL 179606, at *5 (N.D. Cal. Jan. 19, 2021) (the court decided dual criminality was met where California penal code satisfied the requirement, regardless of whether federal law satisfied dual criminality).

Therefore, the Treaty covers the offenses for which Spain seeks extradition.

### E. The Court Finds Probable Cause That Rodriguez-Lastre Committed The Offense For Which Extradition Is Sought.

"As the Fifth Circuit has generally explained, '[c]ertification of eligibility for extradition requires a finding of probable cause that the accused committed the charged offense. Probable cause is 'the existence of a reasonable ground to believe the accused guilty of the crime.'" *Risner*, 2019 WL 6118377, at *6 (quoting *Quintanilla v. U.S.*, 582 F. App'x 412, 415 (5th Cir. 2014)); *accord Ntakirutimana*, 184 F.3d at 427 ("In reviewing a request for surrender, the committing court must determine whether probable cause exists to sustain the charges against the accused.").

Here, Rodriguez-Lastre was convicted of the crime charge and sentenced. ECF No. 1-1 at 28. "Where the person sought already has been convicted, the

---

court. *See Matter of Extradition of Ahn*, 602 F. Supp. 3d 1304, 1309 (C.D. Cal. 2022) (citing *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc*); In re Extradition of Fordham*, 281 F. Supp. 3d at 799 ("It is settled that the dual criminality requirement does not encompass possible 'affirmative defenses[.]'")).

conviction is dispositive of the issue of probable cause." *Perilla Umbarila*, 562 F. Supp. 3d at 741–42 (citing *Sidali v. I.N.S.*, 107 F.3d 191, 196 (3rd Cir. 1997) ("[A] foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition."); *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (agreeing with the district court's determination that "where there has been a judgment of conviction [entered by a foreign court], there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause." (internal quotation marks omitted)); *In re Extradition of Hughes*, No. 12-1831-JGB (MLG), 2013 WL 1124294, at *6 (C.D. Cal. Mar. 18, 2013) ("Where, as here, the fugitive has already been convicted, the conviction is dispositive of the issue of probable cause.")). The undisputed facts establish that Defendant participated in and was represented by counsel at the trial in Spain. ECF No. 1-1 at 28. He was convicted before he absconded. ECF No. 1-1 at 28, 31–59. Thus, Defendant's conviction in Spain alone is dispositive of probable cause.[8]

Nonetheless, the evidence unequivocally establishes probable cause. The evidence supporting the Complaint consists of the detailed sworn statement of the

---

[8] Even if the conviction is considered *in absentia* because Defendant fled Spain after his conviction, based on this record, the conviction would still provide probable cause. *Risner*, 2019 WL 6118377, at *14-16 (finding probable cause based on evidence supporting conviction *in absentia* where defendant chose to be absent and had representation at the trial).

Spanish Senior Judge and President of the Twenty-second Section of the Provincial Court of Barcelona, and the thorough and comprehensive decision of the three-judge panel in Spain who convicted and sentenced Rodriguez-Lastre of sexual abuse of a child. ECF No. 1-1 at 31–59. Accordingly, the Court has more than sufficient information to determine that probable cause exists that Rodriguez-Lastre committed sexual abuse of a child. Rodriguez-Lastre does not dispute that there is probable cause that he committed the offense for which extradition is sought.

## IV.   CONCLUSION

Based on the findings above, the Court finds that Daniel David Rodriguez-Lastre is extraditable to Spain. The Court hereby certifies this finding to the Secretary of State as required under 18 U.S.C. § 3184.

It is **ORDERED** that Rodriguez-Lastre's motion to dismiss is **DENIED**. ECF No. 22.

It is further **ORDERED** that a warrant may issue for the surrender of Daniel David Rodriguez-Lastre to the proper Spanish authorities in accordance with the Extradition Treaty between the United States of America and Spain.

It is further **ORDERED** that Daniel David Rodriguez-Lastre shall remain in and is committed to the custody of the United States Marshal or his authorized representative to be confined in an appropriate facility and is to remain in such

custody until he is surrendered to Spain pursuant to applicable provisions of the Treaty and United States law.

It is finally **ORDERED** that the United States Attorney for this judicial district shall forward a copy of this Certification and Order together with a copy of all transcripts of the proceedings and copies of the documents received in evidence in this matter to the Secretary of State.

Signed at Houston, Texas, on January 17, 2024.

**Dena Hanovice Palermo**
**United States Magistrate Judge**